Good morning. Good morning. May it please the Court, Joe Seguenza for petitioner. In light of the Board's decision in this case, I'll confine my arguments to the presumption of a well-founded fear and whether it was sufficiently rebutted, and also with respect to the matter of relocation, unless the panel would like me to also address credibility. Well, the DIA did not address credibility, correct? That's correct. Yeah, so. Okay. Thank you. If I could direct the panel's attention to AR-588. There is a quote from the petitioner's asylum declaration in support of his request for withholding a cat relief that I believe is critical to this analysis. And if I could quote from that declaration, the police have been searching me at different places since. They have raided the homes of my relatives in the neighboring states. Petitioner submits that this particular quote from the declaration is essential to a proper analysis of the presumption of a well-founded fear and whether it was adequately rebutted and whether Petitioner could safely relocate outside the Punjab. Petitioner submits that the IJ did not engage in an individualized analysis of whether the government had sufficiently rebutted the presumption of a well-founded fear through the various government articles that were submitted and are part of the record. What is critical here, I believe, is that when the IJ analyzed these reports and concluded that the presumption was sufficiently rebutted, he failed to take into account that, assuming that Petitioner is deemed credible, which was the case here, that he was accused of being a militant or an extremist. And this was respect not only to the first arrest, but the second arrest. So if that is properly established, the IJ analyzes or analyzes, rather, these various country conditions articles from the standpoint of whether an ordinary Sikh would be persecuted in India and whether he could possibly relocate. Yeah. Now, I gather your point is that if this were just any old Sikh coming in saying there's trouble, the country reports are sufficient. But because he's been targeted and because he says in his testimony they are continuing to look for me, general country reports aren't enough. Now, there's an additional piece of evidence that goes along with what you're doing, and that's the affidavit from the father. Now, the affidavit from the father has a problem, because at the end of the affidavit, it's written, I read English, I'm fluent in English, and I understand the foregoing. And the IJ used that statement at the end of the affidavit combined with the Petitioner's statement that his father really didn't read any English for discounting that affidavit. What do we do with that? Does that mean we can't look at that affidavit to support the argument that you're making? I believe we could. Unfortunately, the IJ did not confront or the Petitioner was not confronted with this, quote, apparent inconsistency. And as we pointed out in Petitioner's brief, it might have been proper, even under real ID standards, to confront the Petitioner with this inconsistency. I think on cross-examination, if I recall the record correctly, Your Honor, he was only asked simply, is your father fluent in English or can he read English, and Petitioner said he could barely read English. There's nothing in the record, unfortunately, that addresses or gives Petitioner a reasonable opportunity to explain why in that affidavit of the father it seemingly states that he's fluent in English and I'm aware of what's in this affidavit and everything is true and correct. Is it, as pointed out in the brief, is this just a standard form that notaries use in India? Was the affidavit, in fact, read back to father in his native language, assuming that he wasn't fluent in English? So unfortunately, the record is devoid of any evidence in that regard. Perhaps a remand would be appropriate if this panel considers that the IJ erred. Now, here's a variation on the same question. Because the BIA did not reach the adverse credibility finding by the IJ, for the moment we're supposed to assume that the Petitioner is credible for purposes of the analysis we have in front of us, does that mean that we are also supposed to assume that all of the evidence submitted by the Petitioner is credible, which goes, I'm sorry, this is another way, at this question about the affidavit? For purposes of this analysis, yes. It seems that that's part and parcel of assuming that he was credible. The IJ makes this alternative finding, and I believe he specifically points out that, assuming that he was deemed credible, I find that he suffered pass for execution because he suffered, I believe in the IJ's words, horrible mistreatment. So the issues with respect to the father's affidavit and the Sarpanch's affidavit in support of Petitioner's claim should be deemed credible and given sufficient weight. What do we do with the country reports that say, look, there are some very, very high-profile people who are involved in the Khalistan movement that are, that may still be subject to police brutality? And it's clear that there's police brutality going on, it's just not directed at Sikhs. And they've had an effort at reconciliation, and they have a new Sikh prime minister, and so on. And therefore, it's unlikely that sort of ordinary Sikhs who are involved in some political affairs are going to be targeted. Now, what do we do with that information? Yes, Your Honor. I believe, again, it's critical. If the Petitioner was accused of being a militant or extremist, which is unrebutted, and that quote that I read from his declaration stands unrebutted in the record, no one questioned him about it. If you deem that's credible, I believe the country reports submitted by the government did indicate that there are police custodial abuses and that police will pursue high-profile individuals, whether they're militants or extremists, across State lines. And Petitioner would submit that if, in fact, he is accused of being a suspected terrorist, a terrorist is a terrorist, whether, there's no distinction as to whether one is a high-profile terrorist or a low-profile terrorist. Petitioner would submit a terrorist is a terrorist. Okay, but that's not a protected ground to be a terrorist. Pardon me? That's not a protected ground. If he's a criminal, he doesn't get asylum. Well, I would submit that it would fall under the imputed political opinion prong of the statute. If he wants to blow up a, you know, fly a plane into a building, he would get asylum because he does it for a political motive? No, Your Honor. He testified that he was a Sikh and he was advocating calisthenics, so that's part of his political opinion. But he was also falsely accused of being an extremist or a terrorist, a militant individual who was advocating calisthenics also. So if you not lump them together, but if you consider those together, I would submit that this falls under the political opinion prong. Let me ask you this. What's the most recent contact? Could you remind me that he had or the father had with people looking for him? I believe the record indicates, Your Honor, that following his departure from India, police visited his home at least twice in 2006, 2007, and 2008. 2008 was the most recent? As of yet, yes. I believe the I.J.'s decision was 2009. So if a remand is appropriate here, perhaps the I.J. could explore if, in fact, the panel believes that there wasn't an individualized analysis done in this case. A remand is appropriate. A remand might be appropriate for relocation issues and changed country conditions and for additional evidence since the 2009 decision and, in particular, a Respondent's statement that the police have been looking for him outside of the Punjab. I see you've got a minute left. Did you want to reserve it? Yes, if I could. Thank you. Thank you. Good morning. Good morning, Your Honors. May it please the Court. John Blakely on behalf of the Respondent, Attorney General of the United States. Your Honors, there's several indicators here that the immigration judge performed an individualized analysis of the evidence on the record. It's true that there's a very detailed discussion. It's five pages of his decision that address country reports. But, again, there are several indicators that it's a very individualized analysis as well. The first of that you can find on page 53 of the record. It's towards the end of the immigration judge's decision. And the immigration judge actually says, again, given his particularized circumstances and the paragraph, that's in the start of the last paragraph on the page. And then with the second to last paragraph, given all these matters, he's considering everything. In addition to that, I'd ask you to look at the other one. Well, he may be considering everything, but the question is whether or not there's enough individualized evidence in the record. I mean, he's obviously considering everything that's in the record. It's not what he considered in the sense of did he think about it. So I'm wondering if you could just tell us what's in the record that is individualized sufficiently as to this particular Petitioner. Certainly, Your Honor. One is the reference to him as a high-profile individual, in fact, saying that he's not a high-profile individual. And I would suggest that even Petitioner recognizes this. On page 63 of Petitioner's brief, he says, The IJ simply states that based on the country condition articles that Petitioner is clearly not an individual in whom the police has any interest. But you see we have testimony from him that says the police are continuing to be interested. That may be false. I just say he may be lying. But if we have to believe him, he's telling us that they're continuing to express an interest in him. Well, I think it's important, Your Honor, to examine the difference between whether he's credible and whether what he says is true, whether he's met the burden of proof of establishing that. We can't say outright that he's credible, that he's lying. But the question is, did this really happen? To what extent are they continuing to confer? Wait a minute. Did this really happen? Meaning, did what he says happen, happen? I think if we're supposed to call him credible, we're supposed to assume that what he says happened, happened. Now, what the consequences might be of that or what the prediction might be, that's a different question. But if he says people came to, the police came to his house looking for him, if he's credible, I guess we're supposed to believe that. The I.J. assumes that on page 53, the same page that you just cited to us, and the same, it's about two-thirds of the way of the, no, it's halfway down. That he assumes what, Your Honor? That, let's see, the Court would presume the Respondent's parents would have more problems than just being, even if true, than just being asked about the Respondent's whereabouts several times in 2008, several times in 2007, a few times in 2006. That's a little bit of speculation by the part of the I.J., isn't it? Does the I.J. have any basis for that? Well, I'd like to, if I can put that in perspective, I'd like to, that what we have to listen, look at first is what actually happened to this individual. And he claims there are basically two instances that establish his past persecution, two separate arrests back in 1994, one in May and one in December. In the first of those, he very publicly expressed his self as a supporter of the Seekers, and by driving, by recruiting and then driving a number of people. But he was just a supporter of a demonstration at that point. So what the police did was they arrested him and they beat him. And then there's some testimony from him that is part of the ordeal that he went through in that jail, that they were accusing him or talking to him about the terrorists, but they let him go. This is a period of time where thousands of Sikhs were disappeared and murdered because they were seen as militants. Okay? He wasn't. He was released. And then it was only six months later that, again, he exposed himself to the police in a relatively benign way by celebrating the death of the President. And what did they do again? They arrested him and they interrogated him and beat him for about a month, I think it says, and then he was released. And he was let go. He wasn't bothered again. Of course, he left before too long, but he was still there several months, and they didn't do anything during that time. So what we're talking about here is we're not talking about a militant and a terrorist. The Indian government knew what to do with terrorists at the time. They knew what to do with the criminals and with the violent extremists who were pursuing Khalistan. And they took care of that. They put that down permanently. That was persecution, and we recognize it, and we grant asylum for somebody who is in that situation. He is not in that situation. He presented himself as a supporter. If you look at his asylum statement, that's what he states he is. He is just a supporter. I want to make sure I understand your position. Is it that the IJ did the individualized assessment that is required, or is it there is now overwhelming evidence that things have changed for the better and that this kind of individualized assessment is no longer required? It's my position, Your Honor, that the immigration judge here performs sufficient individualized analysis, because if you take what I've just said there about who this individual was, the question then for that individual, what does the country conditions information say will happen to an individual of that type? Suppose the judge hadn't have done that. Could he have said, look, I'm not going to look at your individual circumstances. The fact of the matter is the U.K. says things have changed. Canada says things have changed. The State Department says things have changed. And that's enough. I don't need to get into your individual circumstances. Would that have been correct? If he is able to establish that he is an individual who would still be pursued by the government or by those that the government is unwilling and unable to control, then he would have. That's not what we have here. That's not really the question I asked you, though. My question is, can the judge say India today is not the India it was in 2000. It's a new country. I'm not going to look at your particular circumstances, because it's a whole new world over there. Your Honor, I think it's the case law of this Court that the immigration judge is required to do an analysis for this individual, that a country report information standing alone. By standing alone, excuse me, by standing alone you mean the U.S. State Department country report? With the other country reports. That's what I'm asking you. If all the countries in the world agree things have changed, would that be enough or is there still an individualized assessment required? In most situations, I would say it would not be enough. But it would depend on the individual. When it's an individual like in this case where he's just above an ordinary seat, then I would say there's some individualized analysis required. I'm not putting my question as artfully as I could. I'm concerned whether the judge did a sufficient individualized assessment. Okay? So that's my problem with what the I.J. did. But then he says, or I'm sort of extrapolating here, I don't need to really overindividualize this because everybody or the three countries agree that things have changed for the better, so I don't really need to get into that. Sort of like, you know, we have a new Germany today. We don't have the Germany we had in 1939. Certainly, Your Honor. Would that be sufficient? The judge says all this evidence, not just from the State Department, but from the U.K., from Canada, you know, it all shows it's a new India. Your Honor, I can envision some situations where that would be sufficient. And I think what we have, what the Board actually does in the individual cases, it's more of a sliding scale about how much of an individualized analysis is required. If what we were talking about was just this individual is an ordinary Sikh and that's it, then I think the country reports would probably be sufficient. What we have here is an ordinary Sikh who has been made public that he was a supporter and he has encountered some difficulties, then I think the individualized analysis in this case was sufficient. On page 53 of the record, he says the particular circumstance. Given these particular circumstances, if you look at page 215 of the record through 220, this is when Petitioner's counsel is giving basically a closing argument and the immigration judge said, why don't we treat this more as an oral argument and go back and forth. And there's a colloquy about five pages long where the immigration judge basically says there's nothing in the record to indicate that for anybody but high-profile individuals encounter any difficulty. Here's my problem with that analysis. I have to say I'm troubled by this case, but here's my problem with that analysis. It seems to me that the BIA or maybe the IJ both are sneaking into their changed country condition individualized analysis an adverse credibility finding because it's easy to say a general set of reports saying conditions have changed is enough in the absence of testimony or evidence that they're still after him. But it's hard to say that it's enough when he testifies they're still after me. And the BIA is basically disregarding or discounting his testimony when he says they're still after me. Your Honor, this is a real, a post-real IBI case. I understand that. He's not only required to be credible, he's required to meet his burden of proof to establish that what he says is true. He doesn't know firsthand why they he doesn't know firsthand that they came to the house looking for him. The information that he has is from his father. And the information that came from his father was discredited. The IJ specifically says in his decision that even if the Petitioner is credible, I'm finding the information from his father to not be credible. I'm not giving it as he says not credible. He says I'm not giving it as much weight. I'm not sure what to believe. And there's nothing wrong with that, even with the credibility and assuming credible finding for the Petitioner, because there are things on the record here that give reason for the IJ to take weight away from that. And I notice some of them. Let me just ask you real quickly. If we were to conclude that the individualized assessment was inadequate here, what would you have us do? Well, I would ask you to examine the record evidence and determine whether the record evidence compels reversal of the immigration judge's conclusion. We wouldn't send it back and say go do a better individualized analysis? Yes, Your Honor. I mean, that's what we should do. It's insufficient if you feel that the record evidence compels a contrary conclusion here, then it should be sent back. And then on the record. Sent back to do what? So, I mean, if we think that the record evidence compels a contrary conclusion, why doesn't that just end the matter? Well, it should be sent back to address the internal relocation. It can be also to address credibility. If it's merely that the only holding is not that record evidence compels a contrary conclusion, but that there's insufficient individualized analysis, then it could be sent back for. Is it clear that the BIA sort of observed on that question? For a redo of the individual analysis? Yes, Your Honor. Is it clear that the BIA sort of passed on the credibility analysis or that it said, well, let's – I mean, does the BIA want another – does the BIA want another shot at the credibility analysis if we disagree with them on other things? Your Honor, I can't speak to what they would want to do. I think that this is not the strongest adverse credibility determination, but if the Board had affirmed it, I would be very comfortable standing up here and arguing in front of you that it was defensible. The record evidence didn't compel reversal. In any event, even if we were to remand saying either the individualized analysis by the AIJ wasn't enough or whatever the AIJ did, the record is not sufficient to support an individualized analysis that says conditions have changed. A remand at Ervantura requires us to let the BIA reach the question it didn't reach, which is to say adverse credibility. I mean, that's just there. They didn't reach it. I agree 100 percent with that, Your Honor. Thank you very much, Mr. Blakey. Mr. Senguinza, you've got about a minute to change left. Thank you. Just briefly, Your Honor, three points. The petitioner would submit that an individualized analysis is required in all cases where the presumption applies. With respect to the Board passing on the credibility issue, I believe on page 2 of the Board's decision, quote, as the rebuttal of the presumption of future harm is determinative, we need not address the remaining issues on appeal. Supposedly, that would include the adverse credibility finding. Just two quick points, if I may. I would submit that the IJM properly shifted the burden for relocation specifically and with respect to the whether the presumption was rebutted or not by shifting it to petitioner rather than inquiring of chief counsel whether they had produced sufficient evidence to rebut the presumption. And that's evidence by the colloquy that takes up about six pages between counsel – between petitioner counsel and the IJ, where the IJ repeatedly asks petitioner counsel, show me evidence. Where is the evidence of that? So we would submit that he improperly shifted the burden. And if petitioner was just deemed an ordinary Sikh, why would the police have a continuing interest in him as evidenced by the unrebutted statement or evidence that they were still visiting the home and that they were looking for him outside Punjab? I would submit that the police, their ongoing interest strongly infers that the authorities would not let petitioner live peacefully either in or outside Punjab. Thank you. Roberts. Thank you, Mr. Singwiser. Mr. Blakely, thank you. The case just argued is submitted.
judges: Silverman, Fletcher, Bybee